UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RICKY JACKSON,

        Plaintiff,

v.

UNKNOWN HALL et al.,

        Defendants.
_____/

Case No. 1:23-cv-792

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983 which failed to settle in mediation (ECF No. 15). Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss (1) Plaintiff's official capacity claims, (2) Plaintiff's Fourteenth Amendment equal protection claims, and (3) Plaintiff's Eighth Amendment claims for failure to state a claim. Plaintiff's First Amendment retaliation claims against each of the Defendants will remain in the case.

**Discussion**

I.      **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. Plaintiff sues Defendants Sergeant Unknown Hall, Sergeant Unknown Arredondo, and Corrections Officer Devin Moore in their individual and official capacities.

Plaintiff's complaint is handwritten in a highly stylized fashion, which is barely legible. However, the Court was able to make out the following allegations:

Plaintiff alleges that on June 3, 2022, he was walking to dinner when Defendant Moore stated, "Your [sic] sexy as hell boy let me get a piece of that ass." (Compl., ECF No. 1, PageID.3.) Plaintiff responded that he was not homosexual and would write a PREA grievance on Defendant Moore if he continued. Defendant Moore stated that if Plaintiff filed a grievance, he would make sure that Plaintiff's time at the facility was not happy. Plaintiff began to proceed to his housing unit, when Defendant Moore stopped him and told him that he was going to make Plaintiff "suck [his] d**k." (*Id.* (asterisks added).) Plaintiff told Defendant Moore to watch his mouth, but Defendant Moore continued to make sexual comments and gestures. (*Id.*)

Plaintiff tried to return to his housing unit to escape Defendant Moore, but Defendant Moore continued to seek Plaintiff out and to make sexual comments toward Plaintiff, including threatening to force Plaintiff to perform oral sex on him, and to force Plaintiff to submit to anal sex. (*Id.*, PageID.3–4.) Plaintiff feared for his safety and filed a PREA grievance on June 3, 2022. (*Id.*, PageID.4.) Plaintiff was interviewed and seen by a nurse. (*Id.*)

Plaintiff states that he suffered from fear and depression following the incident, which caused him to become physically ill. Plaintiff suffered from nightmares, lack of sleep, loss of appetite, hair loss, and PTSD. (*Id.*)

On July 19, 2022, Warden Matt Macauley sent a notice stating that there was sufficient evidence to support Plaintiff's complaint against Defendant Moore and that Defendant Moore would be disciplined. (*Id.*, PageID.4–5.) Plaintiff subsequently requested to be transferred in order to prevent retaliation or further sexual harassment. (*Id.*, PageID.5.)

On August 20, 2022, an unknown Corrections Officer gave Plaintiff permission to go into another unit to retrieve clothing which he had left in the yard, and which had been picked up by another inmate. (*Id.*) While Plaintiff was on his way to retrieve his property, Defendant Moore saw him and told him that he was a "snitch ass b**ch" and that no one could stop Defendant Moore from "stuffing [his] d**k down Plaintiff's throat and f**king [his] little ass." (*Id.* (asterisks added).) Plaintiff told Defendant Moore to leave him alone and went to find Defendant Hall. (*Id.*)

Plaintiff told Defendant Hall that he did not feel safe around Defendant Moore and that he should not be exposed to him since he had a PREA complaint against him. Defendant Hall expressed a lack of concern, stating that if Plaintiff was afraid, he should go lock down and "get the f**k out of [Defendant Hall's] face." (*Id.* at PageID.6.) Plaintiff explained that Defendant Moore had threatened him a second time and that if Defendant Hall did not take action, he would file a grievance on Defendant Hall for failing to protect him. (*Id.*) Defendant Hall then told Plaintiff to either go to his cell or to the hole, but Plaintiff stated that it was his yard time. Defendant Hall then told Plaintiff to go outside, but that if Plaintiff did not stop complaining about Defendant Moore, he would have Plaintiff placed in the hole. (*Id.*) Plaintiff subsequently made another request to be transferred to another facility. (*Id.*)

On August 28, 2022, Defendant Moore refused to give Plaintiff a plunger to unplug the feces in his toilet, stating that Plaintiff did not have anything coming and should not have filed the grievance on him. (*Id.*, PageID.6–7.) Plaintiff was forced to stay in a cell with a toilet full of feces and urine, which caused Plaintiff to feel nauseous and headachy. (*Id.*, PageID.7) Plaintiff states that because he was forced to use the backed-up toilet, he got fecal matter on his buttocks and developed an itchy rash. (*Id.*)

On August 30, 2022, Defendant Arredondo interviewed Plaintiff on his latest grievance and told him he should sign off on the grievance. Plaintiff refused and again requested a transfer. (*Id.*) Defendant Arredondo told Plaintiff that if he did not sign off on the grievance, he would have him placed in segregation. (*Id.*, PageID.8.) Plaintiff refused and Defendant Arredondo falsified a statement saying that Plaintiff was suicidal, causing Plaintiff to be placed in segregation on suicide watch. (*Id.*) While on suicide watch, Plaintiff was forced to sleep without clothing, which caused him to become depressed and exacerbated his PTSD. (*Id.*)

Plaintiff began writing to the Warden asking to be transferred to another facility, but did not receive a response. Plaintiff then wrote to the facility Residential Unit Manager, who responded by stating that she had spoken to the Inspector and that Plaintiff could not be transferred because there was an educational hold on him. (*Id.*) Plaintiff continued to suffer from symptoms of mental distress, including panic attacks, weight loss, chest pains, and headaches. (*Id.*)

Plaintiff asserts claims of retaliation, deliberate indifference, and a violation of his equal protection rights. Plaintiff seeks compensatory and injunctive relief, as well as compensatory and punitive damages.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

4

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Official Capacity Claims

Plaintiff sues Defendants in their individual and official capacities. Officials named in their official capacities are entitled to immunity with respect to claims for damages. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1988). Nevertheless, an official-capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). However, as the Supreme Court has recognized, a suit under *Ex Parte Young* for prospective injunctive relief is not treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Importantly, as the Supreme Court repeatedly has recognized, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Here, Plaintiff has been transferred from IBC to ICF. Plaintiff's complaint involves events that occurred at IBC in 2022 and does not set forth any allegations suggesting that any named Defendants are engaged in ongoing violations of federal law. Thus, Plaintiff cannot maintain any official capacity claims for injunctive relief against Defendants. Accordingly, his official capacity claims will be dismissed in their entirety.

### B. Equal Protection Claims

Plaintiff claims that Defendants violated his Fourteenth Amendment equal protection rights. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not

6

"deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not allege that a fundamental right is implicated in this case or that he is a member of a suspect class; his claims, therefore, are not subjected to strict scrutiny.

To prove an equal protection claim in a class-of-one case, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10–11 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011). "'[T]he hallmark of [a "class-of-one"] claim is not the allegation that one individual was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class.'" *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (emphasis removed) (quoting *Aldridge v. City of Memphis*, 404 F. App'x 29, 42 (6th Cir. 2010)); *see also Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily.") (emphasis in original). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 791 (6th Cir. 2005)). "Unless carefully

7

circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Loesel*, 692 F.3d at 462 (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210–11 (10th Cir. 2004)).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc.*, 470 F.3d at 298)). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)); *see also Nordlinger*, 505 U.S. at 10; *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'").

Plaintiff's equal protection claims are entirely conclusory. Plaintiff fails to allege any facts showing that he was treated differently from other similarly situated prisoners. Therefore, his equal protection claims are properly dismissed.

**C.     Eighth Amendment Claims**

Plaintiff claims that Defendant Moore subjected him to sexual harassment in violation of Plaintiff's Eighth Amendment rights, and that Defendants Hall and Arredondo were deliberately indifferent to this conduct. "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and

8

wanton infliction of pain'" forbidden by the Eighth Amendment. *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (citations omitted). "To prevail on a constitutional claim of sexual harassment, an inmate must therefore show, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." *Freitas*, 109 F.3d at 1338 (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment. . . . This is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citing *Farmer v. Brennan*, 511 U.S. 825, 848–49 (1994) (discussing inmate abuse); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (same); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (abuse by guards). However, in the context of claims against prison officials, the Sixth Circuit repeatedly has held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See, e.g.*, *Ivey v. Wilson*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim). However, repeated and extreme incidents may sufficiently state a claim. For example, the Sixth Circuit concluded that a prison officer's demand that a female prisoner expose her breasts or masturbate in the officer's presence on six occasions was not "isolated, brief and not severe," and was sufficiently serious to state an Eighth Amendment claim that survives the defense of qualified immunity. *Rafferty*, 915 F.3d at 1095 (6th Cir. 2019); *see also Seltzer-Bey v. Delo*, 66 F.3d 961,

9

962–63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment).

The facts in *Rafferty*, however, are distinguishable from Plaintiff's claims in this case. Defendant Moore allegedly made sexually harassing comments to Plaintiff on two separate dates. Although the alleged demands for sexual conduct were offensive, they were not expressed in the type of personal setting which evidenced the sort of coercive sexual demand at issue in *Rafferty*. Consequently, Plaintiff's Eighth Amendment claims related to Defendant Moore's sexual harassment and Defendants Hall and Arredondo's failure to intervene will be dismissed.

With respect to Plaintiff's claim that he was forced to use a plugged-up toilet on August 28, 2022, because Defendant Moore refused to give him a plunger, the Court notes that allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim.") (internal quotation omitted)). Therefore, Plaintiff's claim regarding the denial of a plunger on August 28, 2022, does not rise to the level of an Eighth Amendment violation.

### D. Retaliation Claims

Plaintiff claims that each of the Defendants retaliated against him in violation of the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he

was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff makes specific allegations showing that in response to his threats to file grievances, his actual filing of grievances, and his refusal to sign off on a grievance, each of the named Defendants subjected him to adverse conduct, including threats of sexual assault, refusing to take Plaintiff's complaints, threatening to have Plaintiff placed in segregation, requiring Plaintiff to stay in a filthy cell with a backed up toilet and denying him cleaning supplies or a plunger, and placing Plaintiff in segregation on suicide watch. Therefore, Plaintiff's retaliation claims are not subject to dismissal on initial review.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's (1) official capacity claims; (2) Fourteenth Amendment equal protection claims; and (3) Eighth Amendment claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's First Amendment retaliation claims against each of the named Defendants remain in the case.

An order consistent with this opinion will be entered.

Dated:   July 25, 2024                                 /s/ Paul L. Maloney
                                                      Paul L. Maloney
                                                      United States District Judge